FILED

2010 JUL -7  A 9: ⁣ ⁣

U.S. ⁣ ⁣ ⁣ ⁣

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ATTORNEY GENERAL OF THE          :
STATE OF CONNECTICUT, and        :
STATE OF CONNECTICUT             :
              Plaintiffs,        :
                       :
v.                               :          CIV. NO. 3:10CV57(PCD)
                       :
HEALTH NET OF THE NORTHEAST, INC.,  :
HEALTH NET OF CONNECTICUT, INC.,    :
UNITEDHEALTH GROUP INC., and OXFORD :
HEALTH PLANS, LLC.               :
              Defendants.        :

## STIPULATED JUDGMENT

    1.      Plaintiffs, the Attorney General of the State of Connecticut and the State of

Connecticut ("the Attorney General," or "Plaintiffs"), and Defendants Health Net of the

Northeast, Inc.("Health Net"), Health Net of Connecticut, Inc. ("Health Net of CT"),

UnitedHealth Group Incorporated ("United"), and Oxford Health Plans, LLC ("Oxford")

(referred to collectively as "Defendants" where appropriate) stipulate that this Final Judgment

(hereafter "Judgment") may be entered by the Court as set forth below.

    2.      The parties have consented to the entry of this Judgment for the purposes of

settlement only without this Judgment constituting evidence against or any admission by any

party and without trial of any issue of fact or law.  Nothing herein including but not limited to

payment of any monetary amounts and any factual recitations, shall constitute evidence of, or be

admissible in any judicial or other proceeding for the purpose of proving any liability or unlawful

conduct on the part of the Defendants, their parents, subsidiaries or affiliates, including but not limited to whether the conduct at issue constitutes a "breach" under any applicable state or federal law.

3.     The entry of this Judgment has been consented to by Defendants as their own free and voluntary act and with full knowledge and understanding of the nature of the proceedings and the obligations and duties imposed upon them by this Judgment, and they consent to its entry without further notice.

4.     In a transaction completed December 11, 2009, Oxford, a subsidiary of United, acquired certain subsidiaries of Health Net, including Health Net of CT.  Oxford did not acquire Health Net.

5.     A goal of the transaction was to transition the members of Health Net of CT to appropriate United/Oxford companies upon renewal of their policies or contracts pursuant to an orderly transition plan.

6.     To ensure a seamless transition, after the closing, Health Net has continued to serve the members and administer the business of Health Net of CT under Administrative Service Agreements, retaining the related employees, administrative systems and other resources it has used to service this business.  Health Net of CT will exercise its contractual rights under those Administrative Service Agreements to ensure that Health Net continues to serve the members and administer the business of Health Net of CT until those members transition to other United/Oxford plans or another insurer's plans. This transition will take approximately two years.

2

7.      This Judgment relates to the operations of Health Net and Health Net of CT and their successors and assigns, and the terms of this Judgment provide specified corrective action set forth in paragraphs 25-49 directed to members in health plans administered by Health Net, including, but not limited to, Health Net of CT.

8.      Defendants have, by their signatures and the signatures of their respective counsels hereto, waived any right to appeal, petition for certiorari, move to reargue or rehear entry of this Judgment in connection with the action styled Attorney General of the State of Connecticut, et al. v. Health Net of the Northeast, Inc., et al., Civil No. 3:10-CV-507(PCD) (the "Lawsuit").

9.      The Court having considered the pleadings and the proposed Judgment executed by the parties and their attorneys and filed herewith, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment may be entered in this matter as follows:

### JURISDICTION AND VENUE

10.     Pursuant to 42 U.S.C. §1320d-5(d), 28 U.S.C. §1331, and 28 U.S.C. §1367, jurisdiction of this Court over the subject matter and over the Defendants for the purpose of entering into and enforcing this Judgment is admitted. Jurisdiction is retained by this Court for the purpose of enabling the Plaintiffs or the Defendants to apply to this Court for such further orders and directions as may be necessary or appropriate for the construction and modification of the provisions herein, or execution of this Judgment, including further relief for any violation of this Judgment. If the Plaintiffs are required to file a petition to enforce any provision of this Judgment against one or more Defendants, the particular Defendant(s) whose breach of this

3

Judgment has prompted such petition agree(s) to pay all court costs and reasonable attorneys' fees incurred in such enforcement, subject to the condition that Plaintiffs prevail against such Defendant(s) in such action.

11.     The Defendants waive any claim of any possible defect associated with service of the Plaintiffs' Complaint and this Judgment and do not require issuance or service of a Summons. The Defendants have appeared through counsel and expressly consent to the personal jurisdiction of this Court.

## PARTIES

12.     Defendant Health Net is a Delaware corporation doing business within the State of Connecticut and Defendant Health Net of CT is a domestic corporation duly licensed under the laws of the State of Connecticut and doing business within the State of Connecticut.

13.     Defendant United is a Minnesota corporation and Defendant Oxford is a Delaware limited liability company licensed under the laws of the State of Connecticut and doing business within the State of Connecticut.

14.     Oxford purchased certain assets of Health Net, including Health Net of CT, pursuant to the Stock Purchase Agreement by and among Health Net, Inc., Health Net, Oxford and United, dated July 20, 2009 (the "Transaction").

15.     Subsequent to the Transaction, which was completed on December 11, 2009, Health Net has continued to administer and operate the business of Health Net of CT pursuant to an Administrative Services Agreement of the same date.

4

## FACTUAL BACKGROUND AND COVERED INCIDENTS

16.      On or about May 14, 2009, Defendant Health Net discovered that a terabyte portable computer disk drive containing personal information ("PI" as that term is defined by Conn. Gen. Stat. §36a-702b(a)) and protected health information ("PHI" as that term is defined under the Health Insurance Portability and Accountability Act of 1996 "HIPAA"), of many past and present members of the health plan subsidiaries of Health Net was missing from its Shelton, Connecticut office. Health Net conducted an investigation and subsequently learned that the computer disk drive contained approximately 27.7 million scanned pages of over 120 different types of documents such as insurance claims forms, membership forms, appeals and grievances, correspondence and medical records. Health Net subsequently determined that the portable disk drive included PHI and PI of over 1.5 million past and present members of health plans administered by Health Net (the "HN Members"), of which 538,470 were Connecticut residents, including plans of direct subsidiaries. .

17.      In order to determine the scope of the information contained on the disk and identify the Health Net Members, Health Net retained the forensic expert, Kroll, Inc., to conduct an investigation which included searching for the portable drive, interviewing relevant employees, duplicating the contents of the portable drive, determining the type and volume of information that was contained on the portable drive and issuing a report on its findings. Kroll concluded that the data on the portable drive were not encrypted as required by Health Net policy. The data drive contained compressed files of images which Health Net represents could only be viewed with appropriate viewing software.

5

18.       Health Net represents that the data on the missing disk drive was randomly saved and not searchable. After Kroll recreated the disk drive, according to Health Net, the only way that it could have reviewed the images on the disk drive was to manually review page by page all twenty seven million pages of images. A manual review of the twenty-seven million pages of data would have extended the amount of time necessary to identify and notify Health Net Members. Accordingly, Health Net retained Navigant Consulting, Inc. (Navigant), to develop a computer program to mine the portable drive for data necessary to identify and notify Health Net Members. Navigant's computerized process identified the majority of the documents on the portable drive and the Health Net Members referenced therein, but was not able to identify all HN Members referenced on the portable drive, necessitating further manual review of the drive which Health Net represents has now been completed.

19.       Health Net retained Debix, Inc. ("Debix"), to notify by mail all Health Net Members, including approximately 538,470 Connecticut residents (to date), of the incident, to run a dedicated call center to address their questions and concerns, and to provide credit monitoring services described further below.

20.       Health Net oversaw the manual review process. Newly identified Health Net Members are being notified of the incident on a rolling basis and provided information about the availability of the benefits and services Health Net is offering through Debix.

21.       To date, Health Net represents that it has incurred costs exceeding $7,000,000 to investigate the circumstances surrounding the missing portable disk drive, to notify Health Net Members, and to offer credit monitoring services and identity theft insurance.

6

22.     Health Net had in existence privacy policies and procedures regarding PI and PHI; however, certain employees handling the portable disk failed to comply with these policies. Additionally, in the process of transferring data to the disk drive, Health Net did not create a log file of the collection and transfer of the data transferred to the disk drive.

23.     To date, there is no evidence that any Health Net member has been victimized by fraud or identity theft as a result of the loss of the disk drive.

24.     Health Net has updated the Office of the Attorney General periodically on the progress of the manual review process.   Health Net will notify the Office of Attorney General when the last group of notification letters has been sent, which is expected to be June 30, 2010. In conjunction with paragraph 46, should Debix's monitoring reveal evidence indicating that PHI or PI on the portable disk drive is being misused or otherwise disclosed to an unauthorized third party, Health Net shall immediately notify the Office of the Attorney General.

CORRECTIVE ACTION PLAN

25.     Health Net shall be responsible for the performance of all of the steps in the following Corrective Action Plan.  Because the Corrective Action Plan is being undertaken for all HN Members, certain steps required under the Corrective Action Plan will be administered through Health Net, Inc., but the obligations herein shall remain Health Net's sole responsibility.

ONGOING EFFORTS AND IMPROVED SYSTEMS AND CONTROLS

26.     In addition to any actions already undertaken, Health Net shall complete notification of all HN Members identified through the manual review process, including

7

Connecticut members, whose PI or PHI was contained on the portable disk. Health Net shall complete this action by June 30, 2010.

27.     Health Net represents that it has protected all newly identified HN Members by offering through Debix the following credit monitoring services for a period of two years from the date of their enrollment in the services: single bureau credit monitoring through Transunion; retroactive restoration assistance to the date of discovery of the portable drive loss (May 14, 2009); credit restoration services for any confirmed instances of identity theft Debix identifies; reimbursement for security freeze and to unfreeze credit (which is available for two years from the time the individual receives notification); and $1,000,000 of Personal Internet Identity insurance.

28.     Health Net shall supplement its existing security and privacy programs. Specifically, Health Net shall implement (in accordance with this Judgment) technological, training and personnel measures described below in order to further strengthen its security and privacy policies and practices to protect the PHI and PI of HN Members, including Connecticut members. It is expressly understood and agreed that regarding such improved systems and controls, the Attorney General does not endorse or approve any specific product or procedure, and that by agreeing to take such measures, Health Net does not admit that its policies or procedures were not compliant with HIPAA or other laws. Health Net shall complete/implement such actions by the dates specified below.

29.     Health Net shall specifically utilize a combination of hardware and software that resides between the email server and the e-mail client, that is designed to identify email or attachments containing PHI or PI and automatically encrypt email containing such identified

8

information prior to transmission. Health Net has implemented such actions as of September 24, 2009.

30.     Health Net shall implement technology solutions designed to monitor, control and restrict the transfer of PHI and PI to removable media in accordance with applicable HIPAA standards. These technology solutions are designed to permit exceptions allowing transfers to removable media only after a valid business reason has been documented and submitted to Health Net for review and approved in accord with Health Net's policies. Health Net shall begin implementation of such actions by July 3, 2010.

31.     Health Net shall utilize technology solutions designed to identify where PHI and PI reside on its systems and to log actual and attempted access to PHI and PI. Health Net shall also utilize technology solutions designed to log and identify when PHI/PI is uploaded or downloaded from a monitored desktop or laptop. Health Net shall begin implementation of these actions by October 1, 2010.

32.     Health Net agrees to and acknowledges that it has implemented the encrypting of the hard drives on all company laptop computers. Health Net shall implement encryption on all Health Net desktop computers in the same manner. Health Net shall begin implementation of such encryption by July 3, 2010.

### IMPROVED MANAGEMENT/OVERSIGHT STRUCTURE

33.     In addition to implementing the technologies designed to automatically encrypt information and disable unauthorized attempts to utilize removable media, Health Net shall strengthen its oversight of new IT projects as part of the effort to comply with applicable HIPAA security and privacy standards. Specifically, Health Net shall assign an Information Security

Analyst ("ISA") to each new approved IT project. Health Net has implemented the ISA assignment requirement as of July 31, 2009.

34.     The ISAs shall report directly to the Manager of Information Security and shall: (a) evaluate the security requirements at the outset of a new IT project;  (b) check for security gaps during the IT project; (c) respond to project team inquiries regarding security requirements for the handling of PHI and PI and access control; (d) assess the security issues relating to any data migrations within an applicable IT project and (e) report security breaches to the Manager of Information Security.

## IMPROVED TRAINING AND AWARENESS

35.     In addition to Health Net's existing policies and procedures governing privacy and security issues, Health Net shall undertake supplemental measures described below, which are designed to inform and educate its employees about the security and privacy requirements necessary to protect the PHI and PI of health plan members. Health Net shall require all Business Associates (as defined by HIPAA) to execute HIPAA compliant Business Associate Agreements, including confidentiality provisions that require the safeguarding of protected health information.

36.     The Health Net Information Security team has developed process-specific training for all Health Net employees on encryption, storage and the removable media process. Health Net shall use its online Learning Management System to assign training and track compliance.

37.     Health Net's Chief Information Officer (CIO) shall include information security as a regular agenda item at the "Monthly IT All Hands" meetings. Health Net shall undertake this action on an ongoing basis.

38.     Health Net's IT department will continue to address a wide variety of information security topics in its monthly IT Awareness Newsletter that is sent to all Health Net employees. Health Net shall undertake this action on an ongoing basis.

39.     In order to reinforce Health Net's Privacy Policies, on or about February, 2010, Health Net's Privacy Office provided all employees, a laminated one page information sheet about the policies and procedures governing the protection of PHI.  Health Net shall provide all new employees with this laminated one page information sheet.

40.     Health Net began to show DVDs at New Employee Orientation sessions beginning in February 2010 to all new Health Net employees (not just IT employees) with consistent training on their information security responsibilities.  Health Net shall undertake this action on an ongoing basis.

41.     All new Health Net employees will receive training regarding HIPAA privacy and security requirements  including incident response procedures such as employee reporting mechanisms within Health Net (in addition to the information security training via DVDs mentioned above).  Health Net shall undertake this action on an ongoing basis.

42.     Current Health Net employees will receive annual HIPAA training to provide a continuing reminder of their responsibilities with respect to the security and privacy protection of PHI, including its proper use and disclosure.  Health Net will electronically track completion of such HIPAA training.  After 30 days, Health Net employees who have not completed such training will receive weekly reminders and will be identified as non-compliant in a monthly report sent to the Health Net Compliance department.  Failure to complete training will adversely

11

affect employees regarding performance goals specified in paragraph 44. Health Net will undertake this action on an ongoing basis.

43.     Health Net's Director of Information Privacy will continue to coordinate an annual "Compliance Awareness Week" for all employees to emphasize the importance of protecting the privacy and security of PHI. In March, 2010, Health Net issued a Data Security Story on its intranet that consists of interviews with key members of its privacy and security teams to increase awareness among all employees of the serious consequences involved when PHI is not adequately protected. Health Net shall continue the annual "Compliance Awareness Week" on an ongoing basis.

## IMPROVING INCENTIVES, MONITORING, AND REPORTS

44.     Health Net shall incorporate three new performance goals for all employees: a compliance goal--to run operations and businesses in accordance with all regulatory requirements; a privacy goal—to maintain working knowledge, understanding and full compliance with all Health Net privacy and security policies and procedures; and a training goal—to complete all training required by law and Health Net policy. Health Net has implemented such performance goals effective January 1, 2010.

45.     Within 120 days after the entry of this Stipulated Judgment, Health Net shall submit to the Attorney General's Office a written report on the status of all items in the Corrective Action Plan.

46.     Should Health Net experience a security incident that qualifies as a breach under Conn. Gen. Stat. § 36a-701(b) which affects more than 500 Connecticut residents, Health Net

shall provide the Attorney General's Office with written notice of such event within a reasonable time after discovery.

47.　　　Beginning one year from the date the initial report referenced in paragraph 45 is provided, Health Net shall provide semi-annual updates to the initial status report.  Commencing with the 2011 update, Health Net shall include a description of its monitoring activity regarding the Corrective Action Plan, a summary of findings, description of risks identified, and any recommendations to reduce such risks.

48.　　　Upon reasonable request, Health Net shall provide such documentation regarding compliance with the Corrective Action Plan as may be requested by the Attorney General's Office within thirty (30) business days of such request.  Health Net shall maintain for inspection and copying documents describing all technologies and products implemented pursuant to this Judgment and all Health Net policies and procedures, including amendments thereto, applicable to this Judgment.  Such documents shall be maintained for a period of six (6) years.

## PAYMENT TO THE STATE OF CONNECTICUT

49.　　　(a) **Guaranteed Payment**:    Health Net shall pay to the State of Connecticut the amount of $250,000 (Two Hundred Fifty Thousand Dollars), which shall be made payable to "Treasurer, State of Connecticut," and deposited in the State of Connecticut General Fund.  Such payment shall be made by wire transfer in accordance with instructions provided by Plaintiffs' counsel no later than three business days after receipt by Health Net of notice of entry of judgment.

　　　　　(b) **Contingent Payment**: Subject to the condition that the following events have occurred, Health Net agrees to make an additional payment to the State of Connecticut in the

amount of $500,000 (Five Hundred Thousand Dollars): (i) Debix, as the company providing identity theft protection services to the Health Net members referenced in the data on the disk drive, determines through its normal protocols (indicating statistical significance) that the data on the missing disk drive has been accessed and misused; and (ii) 250 Health Net Connecticut members make claims to the Debix insurance policy that Debix links to misuse of the missing disk drive, or Debix otherwise determines their data has been accessed and misused and links this misuse to the missing disk drive.

Health Net's contingent obligation to pay the additional sum of $500,000 (Five Hundred Thousand Dollars) and the applicability of the foregoing conditions set forth in paragraph 49 (a) and (b) shall expire on November 30, 2011.

### RELEASE AND OTHER SETTLEMENT TERMS AND OBLIGATIONS

50.    In exchange for the consideration set forth herein, upon execution of this Agreement, the Plaintiffs agree to release Defendants, all of their parent entities, subsidiaries and affiliated entities, predecessors, successors and assigns and the officers, directors, members, agents, servants, employees of each of them, and shareholders from all civil claims, causes of action, suits and demands, of any kind or character for violations of federal and state law as set forth in the Complaint or arising out of or based upon the subject matter of this Judgment and Complaint, including any and all claims that Plaintiffs could have asserted or of which they were or are aware, up to and including the effective date of the Judgment. The acceptance of this Judgment by the Attorney General or the non-insistence by the Attorney General on an enforcement action, shall not be deemed approval by the Attorney General of any of Health Net's practices. Further, no Defendant nor anyone acting on such Defendant's behalf shall

represent, state, or imply or cause to be represented, stated, or implied that the State of Connecticut, the Attorney General, or any other government unit of the State of Connecticut has approved, sanctioned, or authorized any practice, act, or conduct of such Defendant.

51.    Plaintiffs shall not bring a petition to enforce any requirement imposed by this Judgment until all of the following has occurred:

(a)    Plaintiffs must provide notice to the applicable Defendant(s) in accordance with paragraph 64, and such notice must describe the manner in which the applicable Defendant(s) is claimed to have breached the requirements of the Judgment;

(b)    The applicable Defendant(s) will be provided a period of thirty (30) days after the notice in which to cure the claimed breach.

(c)    Plaintiffs' obligation to provide notice and the right to cure under this section does not preclude Plaintiffs from seeking injunctive relief pursuant to the standards applicable to obtaining such relief in this jurisdiction.

52.    The titles and headers to each section of this Judgment are for convenience purposes only and are not intended by the parties to lend meaning to any actual provision of this Judgment.

53.    Nothing in this Judgment constitutes an agreement by the Attorney General of Connecticut concerning the characterization of the amounts paid hereunder for purposes of any proceeding under the Internal Revenue Code or any state tax laws.

54.    No waiver, modification, or amendment of the terms of this Judgment shall be valid or binding unless made in writing, signed by the party to be charged, approved by this

15

Honorable Court and then only to the extent set forth in such written waiver, modification or amendment.

55. Any failure by any party to this Judgment to insist upon the strict performance by any other party of any of the provisions of this Judgment shall not be deemed a waiver of any of the provisions of this Judgment, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Judgment and the imposition of any applicable penalties for failure to substantially comply.

56. If any clause, provision or section of this Judgment shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect any other unrelated clause, provision, or section of this Judgment, and this Judgment shall be construed and enforced as if such illegal, invalid, or unenforceable clause, section or other provision had not been contained herein.

57. Nothing in this Judgment shall be construed as relieving Defendants of the obligation to comply with all state and federal laws, regulations or rules, nor shall any of the provisions of this Judgment be deemed to be permission to engage in any acts or practices prohibited by such law, regulation, or rule.

58. Except as provided in paragraphs 48 and 49, the terms and conditions contained within this Stipulated Judgment shall expire, effective May 1, 2013, and shall have no force or effect after that date.

59. Nothing in this Judgment shall be construed to waive the Sovereign Immunity of the State of Connecticut or any of its officers, agencies, agents, employees or anyone else duly authorized to act on behalf of the State.

16

60.   This Judgment shall in no way limit the Attorney General's right to obtain documents, records, testimony, or other information pursuant to any law, regulation, rule, or other legal authority of any sort.

61.   This Judgment shall not be construed or used as a waiver or any limitation of any defense otherwise available to the Defendants.

62.   The terms of this Stipulated Judgment shall be governed by the laws of the State of Connecticut. The exclusive forum for resolving any disputes to enforce the terms of this Stipulated Judgment shall be the United States District Court for the District of Connecticut.

63.   Except as otherwise stated in this Judgment, nothing in the terms and conditions of this Stipulated Judgment shall relieve the Defendants of their ongoing and continuing obligations under applicable federal, state or local law. The parties agree that this Stipulated Judgment, and the terms and conditions contained herein, are freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

64.   Notices to be given under this Judgment are sufficient if given by nationally recognized overnight courier service or certified Mail (return receipt requested), or personal delivery to the named party at the address below:

        i.    If to Health Net:

              Attorney Jeffrey L. Poston
              Crowell Moring
              1001 Pennsylvania Ave, NW
              Washington , DC  20004-2595

        ii.    If to UHG or Oxford:

              Attorney Michael P. Shea

Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103

iii.    If to the Attorney General:

Stephen J. Courtney
Assistant Attorney General
Office of the Attorney General
55 Elm St., P.O. Box 120
Hartford, CT  06141-0120

65.    Notice is effective when delivered personally; or three (3) business days after it is

sent by certified Mail; or on the business day after it is sent by nationally recognized courier

service for next day delivery.  Any party may change its notice address by giving notice in

accordance with this paragraph.

66.    The Parties can amend this Judgment by a written document signed by the

affected Parties.

The Clerk is ordered to enter this Judgment forthwith.

HEREBY ORDERED, ADJUDGED AND DECREED.

ENTERED THIS THE 7th DAY OF July , 2010

BY THE COURT:

/s/ Peter C. Dorsey, SUSDJ

_____
JUDGE

18

_____

Richard Blumenthal, Attorney General
State of Connecticut

Date: 7/6/10

By: _____
Health Net of the Northeast, Inc.

Date: _____

By: _____
Health Net of Connecticut, Inc.

Date: _____

By: _____
UnitedHealth Group Incorporated

Date: _____

By: _____
Oxford Health Plans LLC

Date: _____

19

By _____

Health Net of the Northeast, Inc.

Date: _7/6/10_____

Richard Blumenthal, Attorney General
State of Connecticut

Date: _____

By: _____
Health Net of the Northeast, Inc.

Date: _____

By: _____
Health Net of Connecticut, Inc.

Date: 7/1/10

By: _____
UnitedHealth Group Incorporated

Date: 7/1/10

By: _____
Oxford Health Plans LLC

Date: 7/1/10

19